**In re Darlene Jill WISE, Debtor.**

**No. 01–10559 DEC.**

United States Bankruptcy Court,
D. Colorado.

July 24, 2001.

---

R. Scott Schofield, Colorado Springs, CO, for Debtor.

M. Stephen Peters, Chapter 7 Trustee, Wheat Ridge, CO, pro se.

### AMENDED [1] ORDER DENYING TRUSTEE'S MOTION FOR TURNOVER

DONALD E. CORDOVA, Bankruptcy Judge.

Before the Court is the Chapter 7 trustee's Motion for Turnover and the Debtor's

---

1. Pursuant to Fed.R.Civ.P. 60(a) and Fed. R. Bankr.P. 9024, the Court's Order is amended

Response. Through his Motion, the Chapter 7 trustee seeks an order requiring the Debtor to turn over spousal maintenance payments she receives during the 180 day period after the commencement of the case pursuant to 11 U.S.C. § 541(a)(5)(B). The Court conducted an evidentiary hearing on May 8, 2001, following which the Court requested additional briefs on the issues raised by the parties. After considering the evidence presented and the legal arguments of the parties, the Court hereby makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052. For the reasons set forth in this Order, the Court denies the trustee's Motion for Turnover.

## *JURISDICTION*

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), 157(b)(2)(A) and (E).

## *FACTS*

The parties do not dispute the facts. On July 12, 1991, a Decree of Dissolution of Marriage ("divorce decree") was entered by the El Paso County, Colorado, District Court, granting Frederic Wise and Darlene Wise ("Debtor") a divorce. The divorce decree incorporated the parties' property settlement agreement, but made no reference to maintenance for either spouse. *See Debtor's Exhibit 4.*

On September 17, 1992, the El Paso County District Court granted Darlene Wise's Motion for Spousal Maintenance. The Court's order requires Fred Wise to make periodic maintenance payments to the Debtor until the earlier of the Debtor's death or remarriage. Pursuant to this order, the Debtor's ex-husband is obligated pay the Debtor $500.00 per month dur-

ing the relevant 180–day period following the filing of the Debtor's petition.

The Debtor filed her voluntary Chapter 7 petition on January 18, 2001. As of May 8, 2001, the Debtor's ex-husband was in compliance with the maintenance order and had made all required payments. Furthermore, the Debtor's ex-husband had made all payments that he was required to make before the Debtor filed her petition.

## *DISCUSSION*

The Chapter 7 trustee argues that the maintenance payments received by the Debtor during the 180–day post-petition period are property of the estate under 11 U.S.C. § 541(a)(5)(B). Specifically, the trustee contends that the Debtor's acquisition of monthly maintenance payments during the 180–day post-petition period arise from a divorce decree, and that such payments constitute an interest in property that would have been property of the estate if she would have had the payments at the time she filed her Chapter 7 petition. In his brief, the trustee relies on *In re Anders,* 151 B.R. 543 (Bankr.D.Nev. 1993) as authority for his position.

The Debtor disputes the trustee's position that § 541(a)(5)(B) sweeps her post-petition maintenance payments into her bankruptcy estate. The Debtor asserts that the plain language of § 541(a)(5)(B) does not reach post-petition spousal support payments. The Debtor relies on *In re Jeter,* 257 B.R. 907 (8th Cir. BAP 2001) as authority for her position.

At issue, then, is the question of whether spousal support payments arising from a pre-petition state court order and paid to the debtor within the 180–day post-petition period are property of the estate by operation of § 541(a)(5)(B). After reviewing the arguments of the parties and the reason-

to correct citations to *In re Jeter,* 257 B.R. 907 (8th Cir. BAP 2001).

ing of the authorities upon which they rely, the Court concludes that spousal support payments arising from a pre-petition state court order and paid to the debtor within the 180–day post-petition period are not property of the estate by operation of § 541(a)(5)(B).

The commencement of a bankruptcy case creates an estate which includes, among other things:

> (a)(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> ...
>
> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
> (A) by bequest, devise, or inheritance;
> (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
> (C) as a beneficiary of a life insurance policy or of a death benefit plan.

11 U.S.C. § 541(a)(1) and (5).

## I. Debtor Possesses No "Property Interest" in Future Spousal Maintenance Payments under State Law.

◼ As noted above, § 541(a)(5) applies only to certain "interest[s] in property" that the debtor acquires or becomes entitled to acquire within 180 days post-petition. More specifically, the trustee must establish that the debtor has acquired or has become entitled to acquire an interest in property *"as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree."* 11 U.S.C. § 541(a)(5)(B). Although federal law identifies the property interests that are to be included in a

debtor's bankruptcy estate, such property interests themselves are created and defined by state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136, (1979); *see also* 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 541.-LH[3][a] (15th ed. rev.2001) ("[T]he existence and nature of the debtor's interests in property, and of his or her debts, are determined by nonbankruptcy law.").

◼ Historically, alimony or maintenance has not been treated as a property right of the recipient, but rather, as a legal duty and obligation of the spouse ordered to pay such payments. *See, e.g., In re Marriage of Mirise,* 673 P.2d 803, 804–05 (Colo.Ct.App.1983) (explaining that an order for maintenance "imposes a duty on the other spouse only if there is no other source from which the needs can be met."); *see also Higgins v. McFarland,* 196 Va. 889, 86 S.E.2d 168 (1955) (noting that a divorce decree which awards alimony is based upon the natural and legal duty of the obligated party to pay his or her spouse). The Colorado Court of Appeals explained that the purpose in requiring one spouse to pay maintenance is to insure that, after dissolution, the basic needs of the disadvantaged spouse are met. *See Mirise,* 673 P.2d at 804. Indeed, the United States Supreme Court and the Supreme Court of New Mexico characterize a spouse's right to alimony as a "personal right" as opposed to a "property right." *See United States v. Davis,* 370 U.S. 65, 70, 82 S.Ct. 1190, 1193, 8 L.Ed.2d 335 (1962) (husband's obligations of alimony [is] a personal liability of the husband rather than a property interest of the wife); *Cain v. Cain,* 91 N.M. 423, 575 P.2d 607, 608 (1978) ("[t]he right to alimony under New Mexico case law is a continuation of the right to support and is personal and not a property right.").

The fact that alimony or maintenance payments do not share the normal indicia of "property rights" lends support to the proposition that alimony and maintenance constitutes a personal right as opposed to a property right. The right to receive alimony or maintenance payments can not, for example, be purchased, sold, transferred, gifted, bequeathed, inherited, or used as collateral. Furthermore, spousal maintenance payments are targeted to benefit a specific individual. Being personal in nature, such rights may be modified by the court at any time or extinguished altogether if the recipient spouse remarries or if either spouse dies.

Colorado's Uniform Dissolution of Marriage Act codifies a spouse's common law personal right to support into a qualified statutory right to maintenance. Pursuant to the applicable statute, the court may exercise its discretion and grant an order of maintenance after making certain findings and considering a number of factors set forth in the statute. *See* COLO. REV. STAT. § 14–10–114 (2000). Accordingly, any award of maintenance to a spouse in Colorado is a personal statutory right and not a property right.

Nevertheless, the trustee advances an argument that the debtor possess a property interest in post-petition spousal support payments because, under Colorado law, accrued spousal support payments become judgment debts that may be enforced like any other judgment. Reciting the well established principle that a debtor's bankruptcy estate includes any cause of action owned by the debtor on the petition date, the trustee contends that the Debtor acquires a cause of action to collect on the judgment debt when each maintenance payment becomes due. According to the trustee, this cause of action constitutes an "interest in property" that becomes property of the estate under § 541(a)(5)(B) because the cause of action would have hypothetically been included as property of the estate under § 541(a)(1) at the time the Debtor filed her petition.

While it is true that Colorado law provides that spousal maintenance payments may become enforceable judgment debts, such judgment debts arise *only if* the obligated party fails to make a payment when it becomes due. The relevant Colorado statute provides:

> In any action or proceeding in any court of this state in which ... maintenance is ordered, a payment becomes a final money judgment, referred to in this section as a support judgment, when it is due *and not paid.* Such [judgment] ... may be enforced as other judgments without further action by the court.

COLO. REV. STAT. § 14–10–122(1)(c) (2000) (emphasis added).

Close scrutiny of the trustee's position is unnecessary, however, because the Debtor would, under the facts in this case, have no interest in property in the post-petition maintenance payments even if the Court were to accept the trustee's theory. The parties have stipulated that the Debtor's ex-husband has paid all post-petition maintenance payments that have come due. As a consequence, no judgment debts for accrued post-petition maintenance payments have arisen and, therefore, no cause of action or other cognizable interest in property for the collection of post-petition maintenance payments would be available to the Debtor outside of bankruptcy, or to the trustee by virtue of § 541(a)(5)(B).

Because § 541(a)(5)(B) applies only to a debtor's "interest in property," and that under Colorado law, maintenance payments are not a property right but rather a statutory right personal to the Debtor, the Court concludes that the Debtor has no interest in property to turn over. The

trustee's Motion for Turnover must therefore be denied.

## II. 11 U.S.C. § 541(a)(5)(B) Reaches Property Settlements, Not Maintenance Awards

The Debtor argues that, in Colorado, maintenance awards are made independently of any property settlement order in a dissolution proceeding. Noting that the language of § 541(a)(5)(B) specifically refers to property acquired through a property settlement but omits language pertaining to maintenance or alimony awards, the Debtor believes the reach of the statute is, by its own language, limited to property a debtor acquires directly from a property settlement. As the Debtor's maintenance payments were not acquired as the result of a property settlement, the Debtor concludes that the maintenance payments she receives are beyond the reach of § 541(a)(5)(B). In support of her position, the Debtor relies upon the holding and reasoning of *In re Jeter*, 257 B.R. 907 (8th Cir. BAP 2001).

In *Jeter*, the Bankruptcy Appellate Panel for the Eighth Circuit examined the same issue presented in this case and held that alimony payments a debtor receives during the 180–day post-petition period are not brought into the estate by § 541(a)(5)(B). The *Jeter* Court explained that the statute unambiguously provides that a debtor's bankruptcy estate only includes property or an interest in property a debtor receives from a property settlement agreement or a final divorce decree within the 180 post-petition period. The Court emphatically wrote: "On its face and by its plain language, § 541(a)(5)(B) does not reach alimony awards." *Id.* at 910. The Court buttressed its conclusion by noting that applicable Nebraska statutes and case law makes clear that alimony awards and property settlements serve very different functions. *See id.* at 911. Finally, the Court explained that, as a policy matter, post-petition alimony payments should be excluded from the debtor's estate.

The trustee urges the Court to adopt a much broader interpretation of § 541(a)(5)(B) than that advocated by the Debtor and adopted by the *Jeter* Court. The trustee contends that the "plain language" of the statute includes not only property acquired exclusively from a property settlement agreement, but also any interest in property that the debtor acquires as the result of a interlocutory or final divorce decree. The trustee argues that the statute is written in the disjunctive to include any interest in property acquired by the debtor through a property settlement agreement, *or* an interlocutory or final divorce decree. Reading the statute in this way, the trustee asserts that the Debtor's award of maintenance should be considered property of the estate under the statute because the maintenance obligation arose out of a court approved divorce decree.

The trustee's position is unpersuasive for two reasons. First, regardless of how broadly the trustee interprets the statute, his position fails to reconcile the conflict noted in section I above that the statute affects property rights of the debtor, not personal rights of the debtor. Even under the trustee's broad interpretation, the debtor's right to maintenance remains a personal right and not a property right subject to inclusion in the estate by § 541(a)(5)(B).

Second, the Court finds the rationale of the *Jeter* Court to be more persuasive than that presented by the trustee. The Court agrees with the *Jeter* Court's conclusion that property settlements are different from alimony or maintenance awards, and that, on its face, the plain

language of the statute does not reach alimony or maintenance payments. If Congress had intended for the provision to reach maintenance awards, it would have specifically included language to that effect.

Important to the *Jeter* Court's interpretation was the clear distinction between alimony awards and property settlements created by Nebraska's statutory and case law authority. Colorado's statutory provisions and accompanying case law establish a similar distinction between maintenance awards and property settlements. While Colorado law offers numerous examples demonstrating · the difference between maintenance and property settlements, only a few examples are necessary to demonstrate this point.

 To begin with, property disposition and maintenance awards are controlled by two separate statutory provisions. *Compare* COLO. REV. STAT. § 14–10–113 (2000) (disposition of property), *with* COLO. REV. STAT. § 14–10–114 (2000) (maintenance). These provisions imply, and Colorado's case authority confirms, that property settlements intend different results: property divisions are intended to accomplish a just apportionment of marital property over time, whereas maintenance is intended be a substitute for marital support that can be used, for example, to ease a spouse's transition into the work force and prevent the spouse from becoming dependent on public assistance. *See In re Marriage of Sinn*, 696 P.2d 333, 336 (Colo.1985). Division of property is mandatory under COLO. REV. STAT. § 14–10–113, whereas an award of maintenance is discretionary under COLO. REV. STAT. § 14–10–114. The timing of property settlements and awards of maintenance further distinguishes the two concepts. Maintenance may be considered *only after* the court approves the division of property. The factors that must be considered by the court in determining maintenance "presuppose[ ] that the court has first set apart to each spouse his or her respective property and has divided the marital property." *See In re Marriage of Jones*, 627 P.2d 248, 252 (Colo. 1981). Like Nebraska law, Colorado law clearly distinguishes between property settlements and maintenance. This Court concludes, as the *Jeter* Court did, that the language of § 541(a)(5)(B) reaches property settlements but does not reach awards for maintenance.

For the two independent reasons stated above, the Court concludes that the maintenance payments received by the Debtor during the 180–day post-petition period are not property of the estate under § 541(a)(5)(B).

The Court recognizes that the bankruptcy court's decision in *In re Anders*, 151 B.R. 543 (Bankr.D.Nev.1993) reaches a different conclusion. However *Anders* is neither controlling nor persuasive. Moreover, this Court concurs with the *Jeter* Court's conclusion that *Anders* is wrongly decided. *See Jeter*, 257 B.R. at 912. In addition to the faults outlined by the *Jeter* Court, the Court disagrees with the holding of *Anders* because it wrongly expands the estate to include not only property rights of the debtor, but also rights that are *personal* to the debtor.

For the reasons stated herein, it is

ORDERED that the Chapter 7 Trustee's Motion for Turnover is DENIED.